Silver *v.* Television City, Inc., Appellant.

Argued November 9, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF- MAN, JJ. (FLOOD, J., absent).

*Loyal H. Gregg*, with him *C. Holmes Wolfe, Jr.*, and *White, Jones and Gregg*, and *Moorhead & Knox*, for appellant.

*Robert E. Walsh*, with him *Suto, Power, Balzarini & Walsh*, for appellee.

OPINION BY MONTGOMERY, J., December 16, 1965:

This appeal by the defendant, Television City, Inc., which operates a commercial television station and broadcasting system known as WTAE-Channel 4, is from a judgment in favor of the appellee-plaintiff, Sam Silver, for $7,500 entered on a jury verdict in his favor in an action of assumpsit to recover for the use of a program known as "Air Your Gripe" which appellee-plaintiff claimed to be his property protected by a com- mon-law copyright.

Two questions are presented to us. The first is whether plaintiff-appellee's program was a new and novel idea reduced to concrete form; and the second is whether the plaintiff should have been permitted to tes- tify as to its market value.

Viewing the evidence in the light most favorable to plaintiff, the verdict winner, it is clear that he had re- duced to concrete form by tape recording, typewritten format, and dummy script his ideas for the program

"Air Your Gripe", and that he had presented them to agents of the defendant which had used them in a program known under a different name, "Pulse of the People". The basic idea of "Air Your Gripe" was that people are interested in venting or airing in public their wrath against what they feel are iniquities or injustices. The format or layout of the show began with a solicitation by the station of letters from people who had complaints, "beefs". The people who wrote the most interesting letters would then be invited to appear at the station and broadcast their opinions without interrogation. Thereafter a moderator would review in brief what the person had broadcast. The designated time of the program determined how many such persons would appear to broadcast on each occasion. Plaintiff was permitted to testify that his program was flexible inasmuch as it would permit the expression of compliments or praise as well as complaints, and that he had suggested to defendant's agents that in that manner the pulse of the people could be determined.

It is defendant's contention that this idea was not novel but was an audience participation telecast or "letter to the editor" type of program which had been in the public domain for many years. In support of its contention defendant introduced into evidence a publication called "interaction", being a collection of television public affairs programs at the community level copyrighted in 1960 by the Television Information Office. This publication contained the names, with a brief description of the programs, of 1,038 such programs broadcast by 562 television stations in the United States. Defendant also offered the testimony of Mr. David Murray and Mr. Nick Perry, two of its staff announcers, concerning similar programs each had seen or participated in prior to the time they had heard of the one offered by plaintiff, and further testimony that "Pulse of the People" had been developed as a result

of conferences with the journalism department of Duquesne University. This evidence was submitted to the jury to aid it in determining whether "Air Your Gripe" was a novel idea. The jury resolved that issue in plaintiff's favor. Defendant now asks us to say, as a matter of law, that it was not novel.

The leading case in Pennsylvania in this field is *Thomas v. R. J. Reynolds Tobacco Company*, 350 Pa. 262, 268, 38 A. 2d 61, 64 (1944), to which both sides to this appeal refer. That case recognizes that, "Each case of this nature must of necessity depend upon its own facts. A line of demarcation dividing the novel, new, and concrete from the abstract is incapable of exact determination. Whether an idea is novel and whether its form is concrete are matters of degree. Whether the issue is one of fact or of law cannot be known in advance of the particular case. Certainly, however, the line must have a sufficiency of breadth to encompass ideas capable of being either. Appellant's idea is not one of these; it is clearly abstract and is neither novel nor new." The facts therein may be briefly stated as follows. Being compelled by the depression to practice economy the plaintiff-appellant therein had discontinued smoking Camel cigarettes and had resorted to cheaper or "Ten Cent" brands and by doing so he became convinced that Camels were not only the best but most economical since they burned approximately twice as long as other brands. This idea was expressed in a letter to the makers of Camels. The defendant-appellee maker offered uncontradicted evidence that prior to the date of the plaintiff's letter scientific tests of the comparative burning time of various cigarettes had been made establishing the fact asserted by plaintiff. The Court in *Thomas v. R. J. Reynolds Tobacco Company*, in affirming the lower court held as a matter of law that the idea offered by Thomas was not novel.

In *Liggett & Myers Tobacco Co., Inc. v. Meyer,* 101 Ind. App. 420, 422, 194 N.E. 206, 207 (1935), the plaintiff-appellee submitted by letter an advertising scheme for use on billboards which consisted of "Two gentlemen, well groomed, in working clothes or in hunting togs apparently engaged in conversation, one extending to the other a package of cigarettes saying, 'have one of these', the other replying, 'no, thanks; I smoke Chesterfields.'" Our Supreme Court in *Thomas v. R. J. Reynolds Tobacco Company,* supra, said of this idea, "Had appellant presented a novel and new idea as definite and concrete as that in the Liggett & Myers Tobacco Co. v. Meyer case a different conclusion might be justified."[1]

Radio and television programs may be such literary productions as are protected by the common law. *Waring v. WDAS Broadcasting Station, Inc.,* 327 Pa. 433, 194 A. 631 (1937); *Stanley v. Columbia Broadcasting System,* 35 Cal. 2d 653, 221 P. 2d 73 (1950). However, they must evidence the exercise of skill, description and creative effort. It is no objection to the claim of a person doing so, that he takes existing material from sources common to all writers and combines and arranges them so long as he creates a new form and gives them an application unknown before in a different manner and for a different purpose resulting in a real improvement over existing modes. *Stanley v. Columbia Broadcasting System,* supra.

Although the question of originality is one of law in the first instance to determine if there is evidence

---

[1] The lower court in *Thomas v. R. J. Reynolds Tobacco Company,* reported in 37 Luzerne L.R. 83, 89 (1942), commented on the *Liggett & Myers Tobacco Company v. Meyer* case, as follows: "In that case the plaintiff submitted a concrete plan containing the suggested wording, the form and the medium by which it was to be brought before the public. In the case now before us there was nothing more presented than the fact that Camels were slower burning than other brands."

to submit to the jury, *Thomas v. R. J. Reynolds Tobacco Company*, supra; *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 256 P. 2d 947 (1953), the question is generally one of fact for the jury. *Stanley v. Columbia Broadcasting System*, supra; *Yadkoe v. Fields*, 66 Cal. App. 2d 150, 151 P. 2d 906 (1944); *Dezendorf v. Twentieth Century-Fox Film Corporation*, 99 F. 2d 850 (9th Cir. 1938); *New York Belting & Packing Company v. New Jersey Car Spring & Rubber Company*, 137 U.S. 445, 11 S. Ct. 193, 34 L. Ed. 741 (1890).

Defendant contends strenuously that its evidence, uncontradicted, demonstrates that plaintiff's program was not new or novel because audience participation in telecasts and letters-to-the-editor type programs. had been in the public domain for many years. We do not agree. Our analysis of "Air Your Gripe" in the light of the record before us leads us to the same conclusion reached by the learned trial judge as well as the court en banc, that this issue was for the jury, and we adopt the analysis of that court.

"From this book ["interaction"] defendant endeavored to pick out various programs which were classified as 'letters to the editor' shows and which were felt to prove that the arrangement of ideas incorporated in 'Air Your Gripe' had been well known to the television industry before the first telecast of 'Pulse of the People' was made. No show identical to 'Air Your Gripe' or 'Pulse of the People' was found. Some shows relied upon religion, law, current events, or other specific areas of discussion for their subject matter; some interviews were regularly conducted on a 'pro' or 'con' basis; others solicited letters but retained the same panel members for discussion purposes. Many of those shows featured discussions on controversial questions by panelists or guest speakers who were without real convictions on the topics before them. Plaintiff's combination of solicitation of letters from the television audi-

ence, upon any subject which the viewer personally feels strongly about and which he would like to present on television, with the subsequent selection of topics by the station, and the eventual television interview conducted without prompting or interrupting questions from the moderator, was distinguishable from any other show produced by defendant at trial. We feel it was for the jury to say if those distinguishing factors were sufficiently new and novel to be entitled to legal protection as a property right."[2]

We may add that the foregoing analysis made by the lower court is also applicable to the testimony of defendant's witnesses, Mr. David Murray and Mr. Carl Ide, as well as to the publication "interaction". Although there were many programs referred to by these witnesses in which the people spoke, there were none identical with the program under consideration in this case. We think the line of distinction, although limited, was broad enough to justify the submission of the issue of novelty to the jury.

*Herwitz v. National Broadcasting Company*, 210 F. Supp. 231, 236 (S.D. N.Y. 1962), is relied on heavily by defendant. Judgment was entered for the defendants in that case because the idea therein was abstract, the Court saying, "As plaintiff stressed throughout the trial, the single important element in his program was the dilemma of a contestant having to choose between a specific amount of cash and a prize of unknown value. Stated in this manner, this is certainly nothing more than an abstract idea." Herwitz, who had no experience or connection with the entertainment industry,

---

[2] Pennsylvania's lower courts have held as proper to submit to a jury on the issue of "novel" such ideas as a plan of giving tickets to a sporting event upon purchase of merchandise, *Evans v. American Stores Company*, 3 Pa. D. & C. 2d 160 (1955), and plans for the construction of a house, *Benaquista v. Hardesty & Associates*, 20 Pa. D. & C. 2d 227 (1959).

formulated the idea of a weekly radio program which he entitled "This is your Birthday Party". It was to be an audience participation show, the persons to be interviewed being chosen by lot, with the interview to be climaxed with "a gift auction". The idea was not developed by Herwitz but he gave the exclusive right to handle it to a New York artist's representative and producer who prepared the script and developed it into a program. For that reason we think that case is similar to *Thomas v. R. J. Reynolds Tobacco Company,* supra, and distinguishable from *Liggett & Myers Tobacco Company v. Meyer,* supra, inferentially approved by *Thomas v. Reynolds.* See also *Belt v. Hamilton National Bank,* 108 F. Supp. 689 (D.C. 1952).

We conclude also that appellant's second contention is not sustainable. Generally, an owner of property, real or personal, is competent to testify as to its value. *Sgarlat Estate v. Commonwealth,* 398 Pa. 406, 158 A. 2d 541 (1960), cert. denied, 364 U.S. 817, 5 L. Ed. 2d 48, 81 S. Ct. 49; *Westinghouse Air Brake Company v. Pittsburgh,* 316 Pa. 372, 176 A. 13 (1934); *Pavloff v. Clairton,* 146 Pa. Superior Ct. 158, 22 A. 2d 74 (1941). It is only when it plainly appears that the owner has no knowledge of the value he expresses an opinion about that the presumption arising from ownership is overcome and his opinion is inadmissible. *Patterson v. Union Transfer Company,* 87 Pa. Superior Ct. 257 (1926). Appellant relies on this case and also on *Pavloff v. Clairton,* supra; *Czerwinski v. National-Ben Franklin Fire Insurance Co. of Pittsburgh,* 138 Pa. Superior Ct. 84, 10 A. 2d 40 (1939); *Esper v. Northwestern National Insurance Co. of Milwaukee, Wis.,* 113 Pa. Superior Ct. 243, 173 A. 724 (1934). In the *Patterson* case the witness was permitted to testify as to the value of a shawl with which she was familiar but not as to the value of 100 unframed engravings with which she was unfamiliar as to quality or

character. However, in the other cases the owner or spouse were permitted to testify as to value.

In our present case it must be conceded that plaintiff was experienced in the entertainment field, having been a manager for Warner Brothers, that he was familiar with television programs, having previously prepared numerous programs for charity, and had submitted three or four programs to defendant, that he was particularly familiar with this program under discussion, having conceived it and prepared the tape, format, and script, that the duration of the program "Pulse of the People" ran once a week for eight months at a cost to defendant of $7,855.62 to produce, and that such programs have a value as an asset. On the basis of this testimony plaintiff was competent to venture an opinion as to the value of his property for the consideration of the jury. In refutation of that opinion the jury had before it the testimony of defendant that the program cost it $7,855.62 to produce and that in eight months it received no income or benefit from it except what benefit it received from the performance of a public service and from getting a message across to the people. The value of some items of personal property is difficult to establish but that does not mean such property is valueless and that damages to it may not be recovered. Compensation cannot be refused because proof of the exact amount of the loss or injury is not produced. Judicial recognition is given to the fact that there is difficulty or even impossibility of the production of such proof, and all that the law requires in such cases is that the evidence shall, with a fair degree of probability, establish a basis for the assessment of damages. *Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc.,* 343 Pa. 270, 22 A. 2d 709 (1941); *Guady v. Seaman,* 188 Pa. Superior Ct. 475, 149 A. 2d 523 (1959). We are of the opinion that sufficient proof was offered in the present case and we cannot say that the

jury's finding of $7,500 or approximately $200 per broadcast for the use of plaintiff's program is so unreasonable as to shock our conscience, justifying a new trial on that basis.

Judgment affirmed.